## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| TINA TUOMINEN, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHNSON & JOHNSON CONSUMER, INC..<br><br>    Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br><br>**Jury Trial Demanded** |

Plaintiff, Tina Tuominen, on behalf of herself and all others similarly situated, brings this class action against Defendant, Johnson & Jonhson Consumer, Inc. ("Defendant" or "J&J"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## GENERAL ALLEGATIONS

1.      J&J offers a variety of non-prescription drugs, including oral nasal decongestants, competing in a billion-dollar industry.  Two such products are the over-the-counter oral nasal decongestants "Sudafed PE: Sinus Pressure + Pain" and "Sudafed PE: Sinus Congestion" products (collectively, "Sudafed PE" or "Products").  While J&J has a number of other Sudafed branded products, the Products are the only phenylephrine hydrochloride nasal decongestants marketed as "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion."

2.      Sudafed PE's "effective" ingredient is phenylephrine hydrochloride, which the weight of the reliable scientific evidence, as recently unanimously confirmed by a Food and Drug

Administration ("FDA") committee, has determined to be no more effective as a nasal decongestant than a placebo.

3.      When consumers purchase decongestants, the strength and effectiveness of the ingredient is a material purchasing consideration, especially for consumers seeking a "maximum strength" product.

4.      J&J takes advantage of this consumer preference for strong relief by prominently representing the alleged strength of Sudafed PE in the one place every consumer looks when purchasing a product—the packaging. On each Sudafed PE product package, J&J touts in all-cap, red font on the front of the package that it is a decongestant providing "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion."  For example, the Sudafed PE: Sinus Congestion product has the following label:



The Sudafed PE: Sinus Pressure + Pain product has similar label, with similar claims, and also falsely touts "Maximum Strength" as to its second active ingredient, acetaminophen, as a pain reliever and fever reducer:



5.     The brand name "Sudafed" gained prominence as a decongestant through—as the name suggests—its use of pseudoephedrine. Sudafed PE borrows from this brand reputation, but provides an ineffective, inferior active oral nasal decongestant ingredient in place of the original one. By using the "Sudafed" label and portraying the product as a "Maximum Strength" decongestant, J&J misleads consumers into believing Sudafed PE's ingredients are suited to providing the strongest decongestant relief available on the market, or at least offered under the Sudafed brand name.

6.     Despite marketing Sudafed PE as "Maximum Strength," J&J knew the active nasal decongestant ingredient in Sudafed PE, phenylephrine hydrochloride, was not as effective as a decongestant. Indeed, studies have shown phenylephrine hydrochloride is no more effective than a placebo. Additionally, the Sudafed PE: Sinus Pressure + Pain product does not even contain the maximum dosages of phenylephrine hydrochloride available or acetaminophen deserving of the "Maximum Strength" label and representation.

7.     Thus, this "Maximum Strength" packaging is misleading because nasal decongestants that are actually effective—without the "Maximum Strength" claim—are available, both on the market and under the Sudafed brand name, and higher strength phenylephrine hydrochloride products exists. For example, both oxymetazoline and pseudoephedrine are both available without a prescription, and the former may be purchased over the counter.

8.     Further, J&J well knew that higher doses of Tylenol, its brand name for acetaminophen, exist on the market. The Court need look no further than its long-established manufacturing and marketing of Tylenol as "Regular Strength" for 325 mg capsules and "Extra Strength" for 500 mg capsules.

9.     Despite this knowledge, J&J chose to mislead consumers through its promotion of the Sudafed PE products, with and without acetaminophen, as a "Maximum Strength" decongestant, pain reliever, and/or fever reducer.

10.     Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether Sudafed PE is a "Maximum Strength" decongestant, pain reliever, and/or fever reducer, or to ascertain the true quality or strength of this product. For that reason, reasonable consumers must and do rely on manufacturers, including J&J, to be honest and transparent and to properly disclose on the packaging all material information regarding the products and the strength of the dosage.

11.     Rather than being honest and transparent, J&J makes this "Maximum Strength" representation in a knowingly false and deceptive manner.

12.     For all the reasons set forth herein, including but not limited to J&J's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of J&J's

Sudafed PE products, for: (1) violation of state consumer protection laws; (2) warranty law; and (3) unjust enrichment.

## THE PARTIES

13.     Plaintiff is a citizen of Illinois, residing in Kane County. She purchased Sudafed PE Sinus Congestion within the applicable statute of limitations period, most recently on or about November 2022.

14.     J&J is a New Jersey corporation with its principal place of business in Skillman, New Jersey.

## JURISDICTION AND VENUE

15.     This Court has personal jurisdiction over J&J in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois. J&J has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold Sudafed PE products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time J&J was engaged in business activities in the state of Illinois.

16.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and J&J are citizens of different states.

5

17. Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because J&J conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Sudafed PE products in this District. Furthermore, Plaintiff resides in this District.

## FACTS COMMON TO ALL CLASS MEMBERS

18. J&J is one of the largest multinational pharmaceutical and medical technologies companies in the world. As such, J&J markets several OTC drugs, including the Sudafed branded line of products.

19. Phenylephrine hydrochloride is the active ingredient in J&J's Sudafed PE products for nasal decongestion. Acetaminophen is the active ingredient in one of the Products that is the subject of this action as a pain reliever and fever reducer. When included, both form the basis for J&J's "Maximum Strength" misrepresentations on the Sudafed PE products' packaging, and overall advertising and marketing campaign.

20. At all relevant times, J&J has marketed its Products in a consistent and uniform manner nationwide.

21. As alleged above, the Sudafed PE products represent that they are "MAXIMUM STRENGTH" relief for "Sinus Pressure" and "Sinus Congestion," and sometime as a "Pain Reliever/Fever Reducer," representations which predominately appear on the front label of the Products in all-cap bold, red lettering that contrasts with the background of the packaging. This instantly catches the eye of all reasonable consumers, including Plaintiff and Class Members.

22.     A reasonable consumer would understand that "MAXIMUM STRENGTH" relief for "Sinus Pressure" and "Sinus Congestion" means the Sudafed PE products contained the best and highest dose of nasal decongestant.  Similarly, that reasonable consumer would understand "MAXIMUM STRENGTH" for "Pain Reliever/Fever Reducer" to mean the product contained the best and highest dose of pain reliever and fever reducer. Indeed, J&J confirms on its website what reasonable consumers would expect—the promise that the Sudafed PE Products contain the "*Maximum strength* sinus decongestant for fast, yet powerful relief from sinus pressure & nasal congestion. Each caplet contains phenylephrine HCl decongestant for effective, non-drowsy symptom relief." *See* https://www.sudafed.com/products/sudafed-pe-sinus-congestion# (emphasis added). J&J confirms on its website that Sudafed PE Sinus Pressure + Pain as a "Non-drowsy decongestant provides powerful relief of sinus congestion and pressure with pain, plus headaches. Each *maximum strength tablet* contains acetaminophen for pain relief and phenylephrine HCI." *See* https://www.sudafed.com/products/sudafed-pe-sinus-pressure-pain (emphasis added).

23.     All reasonable consumers, including Plaintiff, read and relied on J&J's "Maximum Strength" representations when purchasing the Products.  Indeed, when purchasing pharmaceuticals, consumers often look for a product with the highest dosage and most effective active ingredients possible and are hence willing to pay a premium with such representations.

24.     J&J's "Maximum Strength" representation was material to Plaintiff and Class Members' decision to purchase Sudafed PE.  Had consumers, such as Plaintiff, known the Products were not "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion," they would not have purchased them.  Indeed, the only reason consumers purchase pharmaceuticals is for their advertised therapeutic effect. They want relief from their cold symptoms, and in this case the

Plaintiff and the class members purchased "Maximum Strength" based on J&J's false representations and omissions.

25.     J&J's marketing efforts are made in order to—and do in fact—induce consumers to purchase the products at a premium because consumers believe they are getting "Maximum Strength" decongestants. This deceives consumers because they are not informed that phenylephrine hydrochloride nasal decongestants are inferior to other, available decongestants.

26.     J&J, however, has at all relevant times been well aware that its Sudafed PE products are not "Maximum Strength" nasal decongestants and that other decongestants that are not promised to be "Maximum Strength" with superior effectiveness are available.

27.     Starting in December 2007, the FDA convened a Nonprescription Drugs Advisory Committee ("NDAC") meeting, to address questions about phenylephrine's purported effectiveness.  On September 11 and 12, 2023, an advisory panel of the FDA met again to present its findings on scientific literature presented as to the effectiveness of phenylephrine hydrochloride (referred to by the FDA as "PE") as an oral nasal decongestant. The panel found: "[W]e have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours)."

28.     In 2015, in a well-publicized fashion, further independent research was submitted to the FDA requesting the PE be reclassified as not effective as a nasal decongestant.

29.     As a leading manufacturer of phenylephrine hydrochloride oral nasal decongestants, J&J knew or should have known of the same scientific literature reviewed by the FDA.  Nonetheless, it represents that the Sudafed PE products are Maximum Strength.  This is particularly misleading because J&J offers other Sudafed-branded nasal decongestants, which

contain effective active ingredients, such as pseudoephedrine, which are not marketed as ""Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion." Accordingly, consumers are induced into purchasing the Sudafed PE products, based on the "Maximum Strength" representation, when comparing it to other Sudafed-branded and competing nasal decongestants.

30.     However, the Sudafed PE: Sinus Pressure + Pain product's "Maximum Strength" relief for "Sinus Pressure + Congestion" representation is misleading for another reason. As the back label of the Sudafed PE: Sinus Pressure + Pain product discloses, the only active ingredient for "Nasal decongestant" is 5 mg of "Phenylephrine HCL" per dose, which is half the dosage prescribed in the FDA monograph covering oral nasal decongestants:



31.     This is misleading because Defendant's other phenylephrine-based Sudafed products contain 10 mg of phenylephrine hydrochloride. For example, the Sudafed PE: Sinus Congestion offers 10 mg of phenylephrine per dose. Accordingly, the Sudafed PE: Sinus Pressure

+ Pain does not even contain the maximum dosage of phenylephrine allowable by FDA. Thus, the "Maximum Strength" claim is literally false based on FDA's allowable limits.

32.     Nonetheless, because the Sudafed PE products contain phenylephrine as the only active oral nasal decongestant ingredient, they are not "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion." Phenylephrine is not the "Maximum Strength" nasal decongestant available on the market. Even Defendant offers other Sudafed-branded decongestant with higher strength and more effective active decongestant ingredients.

33.     Further, the Sudafed PE: Sinus Pressure + Pain product's "Maximum Strength" relief for "Sinus Pressure + Congestion" representation is misleading for yet another reason, because the only active ingredient for "Pain Reliever/Fever Reducer" is 325 mg of acetaminophen, which is the equivalent of a "Regular Strength" Tylenol tablet. Thus, the strength of the acetaminophen is far below anything can be considered "Maximum Strength," or as J&J calls it "Extra Strength."

34.     J&J intended for Plaintiff and Class Members to be deceived or mislead by its misrepresentations and omissions. Indeed, label space is limited, so manufacturers only place the most pertinent information on the front label. J&J specifically labeled and marketed the Sudafed PE products as "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion," and sometimes "Pain Reliever/Fever Reducer" when other Sudafed-branded oral nasal decongestants were not marketed in a similar fashion.

35.     J&J's deceptive and misleading practices proximately caused harm to Plaintiff and the Classes.

36.     Plaintiff and Class Members would not have purchased the Sudafed PE products or would have paid less for them, had they known the truth about the mislabeled and falsely

advertised products. Indeed, other nasal decongestants, with more effective ingredients and dosages, are available on the market for less.

## PLAINTIFF'S FACTUAL ALLEGATIONS

37.     Plaintiff relied on the Sudafed PE "Maximum Strength" label in deciding to purchase what she believed to be an effective nasal decongestant. Had Plaintiff known that phenylephrine, the only active oral nasal decongestant ingredient in Sudafed PE, is not the "Maximum Strength" nasal decongestant available on the market, she would not have purchased it.

38.     Plaintiff resides in Batavia, Illinois and is a citizen of Illinois. Throughout the relevant period, Plaintiff purchased the Products at issue in this lawsuit and was exposed to and reasonably relied upon J&J's "Maximum Strength" representations. Specifically, Plaintiff purchased Sudafed PE: Sinus Congestion from a local Walmart located at 801 N Randall Rd, Batavia, IL 60510 within the last three months. Upon purchase, Plaintiff reviewed the Product packaging, including the front-label representations, and reasonably believed from these representations that the Products were "Maximum Strength". In reasonable reliance on these representations, Plaintiff paid an increased cost for the Product, which were worth less than represented because the statements were not true and were highly misleading. The Maximum Strength representation on the Product packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if she knew the Maximum Strength representation was untrue and/or misleading. Plaintiff paid a price premium for empty promises that J&J did not keep. Had Plaintiff been aware that the Maximum Strength representation made

11

by J&J on the Products was untrue, she would have paid less for the Products, or would not have purchased them at all.

## FED. R. CIV. P. 9(B) ALLEGATIONS

39. J&J made material misrepresentations and/or omissions of fact in its labeling and marketing of the Sudafed PE products by representing that they are "Maximum Strength" decongestant and pain reliever/fever reducer products.

40. J&J's alleged conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Sudafed PE products are "Maximum Strength" oral nasal decongestant products. J&J omitted from Plaintiff and Class Members that the Sudafed PE products are not "Maximum Strength" oral nasal decongestant products because other decongestant products exist in the market that are much more effective as decongestants. J&J knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, J&J has and continues to represent that the Sudafed FE products are "Maximum Strength" oral nasal decongestant products when they are not, and has omitted from the products' labeling the fact that there are other prescription products available in the market that are superior decongestants. All of that is also true as to its representation that Sudafed PE: Sinus Pressure + Pain is a "Maximum Strength" pain reliever/fever reducer, even though its acetaminophen content is only regular strength.

41. J&J made material misrepresentations and/or omissions detailed herein, including that the Sudafed PE products are "Maximum Strength" oral nasal decongestant and pain reliever/fever reducer products, continuously throughout the applicable class period(s).

42. J&J's material misrepresentations and omissions, that the Sudafed PE products are "Maximum Strength" oral nasal decongestant and pain reliever/fever reducer products, were

located on the front label of the Sudafed PE products in all-cap, bold red lettering that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and Class Members, at the point of sale in every transaction. The Sudafed PE products are sold in J&J's brick and mortar stores and online stores in Illinois and nationwide.

43. J&J made written misrepresentations of fact on the front label of the Sudafed PE products, that the products were "Maximum Strength" oral nasal decongestant products, even though other stronger decongestant products are available in the market. As such, J&J's "Maximum Strength" representations are false and misleading. Moreover, J&J omitted from the Sudafed PE products' labeling the fact that there are other prescription products available in the market that are more effective decongestants and pain relievers/fever reducers. And as alleged in detail throughout this Complaint, Plaintiff read and relied on J&J's "Maximum Strength" representations and omissions before purchasing the products.

44. J&J misrepresented its Sudafed PE products as being "Maximum Strength" decongestant products and omitted from the products' labeling the fact that there are other, non-prescription products available in the market that are effective decongestants, for the express purpose of inducing Plaintiff and Class Members to purchase the inferior phenylephrine hydrochloride products at a price premium. As such, J&J profited by selling the misrepresented products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action on behalf of herself and the following "Classes" pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**Nationwide Class**: All persons in the United States who purchased the Products in the United States for personal use and not for resale during the applicable statute of limitations period.

**Multi-State Consumer Protection Class:** All persons who purchased in the State of Illinois or any state with similar laws[1] any of the Products, within the applicable statute of limitations, until the date notice is disseminated.
**Illinois Subclass**: All persons in the State of Illinois who purchased the Products in the State of Illinois for personal use and not for resale during the applicable statute of limitations period.

46.     Excluded from the Classes are (a) any person who purchased the Sudafed PE products for resale and not for personal or household use, (b) any person who signed a release of any J&J in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any J&J or any entity in which a J&J has a controlling interest, (d) any legal counsel or employee of legal counsel for J&J, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

47.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

48.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While

---

[1] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Cal. Bus. & Prof. Code § 17200*, et seq*.); Florida (Fla. Stat. §§ 501.201, *et seq*.); Illinois (815 ICLS §§ 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §§ 445.901, *et seq*.); Minnesota (Minn. Stat. §§ 325F.67, *et seq*.); New Jersey (N.J. Stat. §§ 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§ 349, *et seq*.); Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.); *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

14

the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.

49.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

a.   Whether J&J made the "MAXIMUM STRENGTH" representations;

b.   Whether J&J promoted the Sudafed PE products with false and misleading statements of fact and material omissions;

c.   Whether J&J's "MAXIMUM STRENGTH" representations are deceptive, unfair, or misleading to the reasonable consumer;

d.   Whether J&J's actions and/or omissions violate applicable laws;

e.   Whether J&J's conduct is a breach of warranty;

f.   Whether Plaintiff and putative members of the Classes have suffered a loss of monies or property or other value as a result of J&J's acts, omissions, or misrepresentations of material facts;

g.   Whether J&J's was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the Sudafed PE products;

h.   Whether Plaintiff and members of the putative Classes are entitled to monetary damages or statutory damages and, if so, the nature of such relief; and

i.   Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

50. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Sudafed PE products and each sustained damages arising from J&J's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiff and all members of the putative Classes have been similarly affected by J&J's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of J&J's false and deceptive "Maximum Strength" representations about the Sudafed PE products, as alleged herein.

51. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and their counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Classes.

52. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible

16

standards of conduct for J&J. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

53. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** J&J has acted or refused to act on grounds generally applicable to Plaintiff and all members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, J&J has marketed, advertised, distributed and sold the Sudafed PE products containing the products' "MAXIMUM STRENGTH" representations, which are false and misleading, and continues to do so.

54. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a. The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by J&J's conduct;

    b. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

    d. Individual joinder of all members of the Classes is impracticable;

    e. Absent a class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of J&J's unlawful conduct; and

    f. This action presents no difficulty that would impede its management by the Court as a

class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by J&J.

g.  In the alternative, the Classes may be certified for the following reasons:

(1) The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for J&J;

(2) Adjudications of claims of the individual members of the Classes against J&J would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

(3) J&J has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

### **CLAIMS FOR RELIEF**

### **COUNT ONE**
**Breach of Express Warranty**
**(By Plaintiff on Behalf of the Nationwide Class**
**or, in the Alternative, the Illinois Subclass)**

55.    Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

56.    Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and/or the Illinois Subclass against J&J.

57.    Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and class members purchased the Sudafed PE products.

18

58.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Sudafed PE packaging and through marketing and advertising, as described above.

59.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract with Plaintiff and class members.

60.     As set forth above, Defendant purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Sudafed PE products are "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion," and "Pain Reliever/Fever Reducer."

61.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

62.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' decision to purchase the Sudafed PE.

63.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Sudafed PE.

64.     Plaintiff and Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Sudafed PE.

65.     Defendant thereby breached the following state warranty laws:

- Code of Ala. § 7-2-313;

- Alaska Stat. § 45.02.313;

- A.R.S. § 47-2313;

- A.C.A. § 4-2-313;

- Cal. Comm. Code § 2313;

- Colo. Rev. Stat. § 4-2-313;

- Conn. Gen. Stat. § 42a-2-313;

- 6 Del. C. § 2-313;

- D.C. Code § 28:2-313;

- Fla. Stat. § 672.313;

- O.C.G.A. § 11-2-313;

- H.R.S. § 490:2-313;

- Idaho Code § 28-2-313;

- 810 I.L.C.S. 5/2-313;

- Ind. Code § 26-1-2-313;

- Iowa Code § 554.2313;

- K.S.A. § 84-2-313;

- K.R.S. § 355.2-313;

- 11 M.R.S. § 2-313;

- Md. Commercial Law Code Ann. § 2-313;

- 106 Mass. Gen. Laws Ann. § 2-313;

- M.C.L.S. § 440.2313;

- Minn. Stat. § 336.2-313;

- Miss. Code Ann. § 75-2-313;

- R.S. Mo. § 400.2-313;

- Mont. Code Anno. § 30-2-313;

- Neb. Rev. Stat. § 2-313;

- Nev. Rev. Stat. Ann. § 104.2313;

- R.S.A. 382-A:2-313;

- N.J. Stat. Ann. § 12A:2-313;

- N.M. Stat. Ann. § 55-2-313;

- N.Y. U.C.C. Law § 2-313;

- N.C. Gen. Stat. § 25-2-313;

- N.D. Cent. Code § 41-02-30;

- II. O.R.C. Ann. § 1302.26;

- 12A Okl. St. § 2-313;

- Or. Rev. Stat. § 72-3130;

- 13 Pa. Rev. Stat. § 72-3130;

- R.I. Gen. Laws § 6A-2-313;

- S.C. Code Ann. § 36-2-313;

- S.D. Codified Laws, § 57A-2-313;

- Tenn. Code Ann. § 47-2-313;

- Tex. Bus. & Com. Code § 2.313;

- Utah Code Ann. § 70A-2-313;

- 9A V.S.A. § 2-313;

- Va. Code Ann. § 59.1-504.2;

- Wash. Rev. Code Ann. § 6A.2-313;

- W. Va. Code § 46-2-313;

- Wis. Stat. § 402.313; and

- Wyo. Stat. § 34.1-2-313.

**COUNT TWO**
**Breach of Implied Warranty**
**(By Plaintiff on Behalf of the Nationwide Class, or in the**
**alternative, the Illinois Subclass)**

66. Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

67. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and/or the Illinois Subclass against J&J.

68. Defendant was in the business of selling over-the-counter drugs at all times relevant hereto.

69. Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased Sudafed PE. Implied in that contract was a warranty of merchantability.

70. The implied warranty of merchantability means and includes that the goods will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

71. Here, the Sudafed PE products were labeled as "Maximum Strength" relief for "Sinus Pressure" and "Sinus Congestion," and for "Pain Reliever/Fever Reducer" but did not conform to the promises or affirmations of fact made on the container or label.

72. Defendant thereby breached the following state warranty laws:

- Code of Ala. § 7-2-314;

- Alaska Stat. § 45.02.313;

- A.R.S. § 47-2314;

- A.C.A. § 4-2-314;

- Cal. Comm. Code § 2314;

- Colo. Rev. Stat. § 4-2-314;

- Conn. Gen. Stat. § 42a-2-314;

- 6 Del. C. § 2-314;

- D.C. Code § 28:2-314;

- Fla. Stat. § 672.314;

- O.C.G.A. § 11-2-314;

- H.R.S. § 490:2-314;

- Idaho Code § 28-2-314;

- 810 I.L.C.S. 5/2-314;

- Ind. Code § 26-1-2-314;

- Iowa Code § 554.2314;

- K.S.A. § 84-2-314;

- K.R.S. § 355.2-314;

- 11 M.R.S. § 2-314;

- Md. Commercial Law Code Ann. § 2-314;

- 106 Mass. Gen. Laws Ann. § 2-314;

- M.C.L.S. § 440.2314;

- Minn. Stat. § 336.2-314;

- Miss. Code Ann. § 75-2-314;

- R.S. Mo. § 400.2-313;

- Mont. Code Anno. § 30-2-313;

- Neb. Rev. Stat. § 2-314;

- Nev. Rev. Stat. Ann. § 104.2314;

- R.S.A. 382-A:2-314;

- N.J. Stat. Ann. § 12A:2-314;

- N.M. Stat. Ann. § 55-2-314;

- N.Y. U.C.C. Law § 2-314;

- N.C. Gen. Stat. § 25-2-314;

- N.D. Cent. Code § 41-02-31;

- II. O.R.C. Ann. § 1302.27;

- 12A Okl. St. § 2-314;

- Or. Rev. Stat. § 72-3140;

- 13 Pa. Rev. Stat. § 72-314;

- R.I. Gen. Laws § 6A-2-314;

- S.C. Code Ann. § 36-2-314;

- S.D. Codified Laws, § 57A-2-314;

- Tenn. Code Ann. § 47-2-314;

- Tex. Bus. & Com. Code § 2.314;

- Utah Code Ann. § 70A-2-314;

- 9A V.S.A. § 2-314;

- Va. Code Ann. § 59.1-504.3;

- Wash. Rev. Code Ann. § 6A.2-314;

- W. Va. Code § 46-2-314;

- Wis. Stat. § 402.314; and

- Wyo. Stat. § 34.1-2-314.

## COUNT THREE
### Unjust Enrichment
### (By Plaintiff on Behalf of the Nationwide Class, or in the Alternative, the Illinois Subclass)

73.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

74.     Plaintiff brings this cause of action in the alternative on behalf of herself, the Nationwide Class and/or the Illinois Subclass against J&J. It is alleged in the alternative to the extent there is no adequate remedy at law.

75.     Plaintiff and putative class members conferred a benefit on J&J when they purchased Sudafed PE. By its wrongful acts and omissions described herein, including selling Sudafed PE containing the "MAXIMUM STRENGTH" representations, which did not conform to the promises or affirmations of fact made on the label, J&J was unjustly enriched at the expense of Plaintiff and putative Class Members.

76.     Plaintiff's detriment and J&J's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

77.     J&J has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for J&J to be permitted to retain the benefit. It would be inequitable for J&J to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling Sudafed PE.

25

78.     J&J has been unjustly enriched in retaining the revenues derived from Class Members' purchases of Sudafed PE, which retention of such revenues under these circumstances is unjust and inequitable because J&J marketed, advertised, distributed, and sold the products, and J&J misrepresented the nature of the products, misrepresented their benefits and attributes, and knowingly marketed and promoted the products with "MAXIMUM STRENGTH" representations, which caused injuries to Plaintiff and the class members because they would not have purchased the products based on the same representations if the true facts concerning the Sudafed PE products had been known.

79.     Plaintiff and putative class members have been damaged as a direct and proximate result of J&J's unjust enrichment because they would not have purchased the Sudafed PE products on the same terms or for the same price had they known the true nature of the Sudafed PE products and the misstatements regarding the strength of the Sudafed PE products' active ingredient.

80.     J&J either knew or should have known that payments rendered by Plaintiff and putative class members were given and received with the expectation that the "MAXIMUM STRENGTH" representations made by J&J in advertising, on J&J's websites, and on the Sudafed PE labels and packaging were true. It is inequitable for J&J to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" representations are not true.

81.     Plaintiff and putative Class Members are entitled to recover from J&J all amounts wrongfully collected and improperly retained by J&J.

82.     As a direct result of J&J's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by J&J for their inequitable and unlawful conduct.

26

**COUNT FOUR**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(By Plaintiff on Behalf of the Multi-State Consumer Protection Class)**

83.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

84.     Plaintiff brings this cause of action on behalf of herself and the Multi-State Consumer Protection Class.

85.     Plaintiff and Multi-State Consumer Protection Class members have been injured as a result of J&J's violations of the state consumer protection statutes listed above in paragraph 47 and footnote 1, which also provide a basis for redress to Plaintiff and Multi-State Consumer Class Members based on J&J's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

86.     J&J's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

87.     J&J violated the Multi-State Consumer Class states' consumer protection, unfair trade practices, and deceptive acts laws through its misleading and deceptive advertising that represented that the Sudafed PE products were MAXIMUM STRENGTH." J&J chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe J&J's false and misleading "MAXIMUM STRENGTH" representations and omissions.

88.     J&J's misrepresentations were material to Plaintiff and Multi-State Consumer Class members' decision to purchase the Products or pay a premium for the Products.

89.     J&J made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

90.     As a result of J&J's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Class members paid a premium for the Products.

91.     As a result of J&J's violations, J&J has been unjustly enriched.

92.     Pursuant to the alleged consumer protection, unfair trade practices, and deceptive acts laws, Plaintiff and Multi-State Consumer Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to statutory or treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

### COUNT FIVE
### VIOLATION OF THE ILLINOIS
### CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT
#### (By Plaintiff on Behalf of the Illinois Subclass)

93.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

94.     Plaintiff brings this action on behalf of herself and the Illinois Subclass.

95.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, *et seq*., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

96.    Plaintiff and the Illinois Subclass members were injured by J&J's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass members relied on J&J's misrepresentations, concealments and omissions when purchasing the Products, they were injured at the time of purchase.

97.    J&J does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

98.    The Products purchased by Plaintiff and the Illinois Subclass members were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

99.    J&J engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to J&J as set forth above concerning its Products, which has caused damage and injury to Plaintiff and the Illinois Subclass Members. Plaintiff and the Illinois Subclass members were injured by J&J's unfair and deceptive acts at the time of purchasing the Products.

100.    J&J's marking of Sudafed PE products violates this prohibition by deceiving consumers into believing Sudafed PE is a "MAXIMUM STRENGTH" decongestant or pain reliever/fever reducer.

101.    J&J engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of this Section.

102.    J&J engaged in misleading and deceptive advertising that represented that the Sudafed PE products were MAXIMUM STRENGTH." J&J chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should

29

have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe J&J's false and misleading "MAXIMUM STRENGTH" representations and omissions.

103.    J&J's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

104.    J&J intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

105.    J&J's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

106.    Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the Products but for J&J's material misrepresentations as described in this Complaint.

<u>**COUNT SIX**</u>
**VIOLATION OF THE ILLINOIS**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(By Plaintiff on Behalf of the Illinois Subclass)**

107.    Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

108.    Plaintiff brings this action on behalf of herself and the Illinois Subclass.

109.    The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

110.    815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does

30

any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

111. J&J's marking of Sudafed PE products violates this prohibition by deceiving consumers into believing Sudafed PE is a "MAXIMUM STRENGTH" decongestant or pain reliever/fever reducer.

112. J&J engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of this Section.

113. J&J engaged in misleading and deceptive advertising that represented that the Sudafed PE products were MAXIMUM STRENGTH." J&J chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe J&J's false and misleading "MAXIMUM STRENGTH" representations and omissions.

114. J&J intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Sudafed PE products.

115. J&J's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass members to be deceived about the true nature of the products.

116. J&J's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

117.    J&J's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass Members at the time of purchase.

118.    Plaintiff and the Illinois Subclass Members would not have purchased, or would have paid less for, the Products but for J&J's material misrepresentations as described in this Complaint.

119.    J&J intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action, certifying the proposed Classes, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.    Directing that J&J bear the costs of any notice sent to the Class(es);

C.    Declaring that J&J must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Sudafed PE products, or order J&J to make full restitution to Plaintiff's and the members of the Class(es);

D.    Awarding restitution and other appropriate equitable relief;

E.    Granting an injunction against J&J to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F.    Granting an Order requiring J&J to fully and appropriately recall the products and/or to remove the claims on its website and elsewhere, including "Maximum Strength" representations regarding the Sudafed PE products;

G. Ordering a jury trial and damages according to proof;

H. Awarding Plaintiff and members of the Class(es) compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I. Enjoining J&J from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K. Awarding civil penalties, prejudgment interest, and punitive damages as permitted by law; and

L. Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: September 15, 2023                    Respectfully submitted,


By: */s/ Gary Klinger*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

33

Jeff Ostrow
Jonathan M. Streisfeld
Kristen Lake Cardoso
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Email:  ostrow@kolawyers.com
           streisfeld@kolawyers.com
           cardoso@kolawyers.com

Melissa S. Weiner
Ryan J. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Email: mweiner@pwfirm.com
           rgott@pwfirm.com

Erin Ruben
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com

J. Hunter Bryson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com

*Attorneys for Plaintiff*